**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Billy Woodruff, # 264339 ) | |
| ) | |
| Petitioner, ) | |
| ) | C.A. No.: 9:07-2739-PMD-GCK |
| vs. ) | |
| ) | |
| ) | **ORDER** |
| Warden of Perry Correctional Institution, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court upon *pro se* Petitioner Billy Woodruff's ("Petitioner") Petition for Habeas Corpus relief pursuant to 28 U.S.C. § 2254, which was filed on August 9, 2007. On December 17, 2007, the Attorney General of the State of South Carolina filed a Motion for Summary Judgment urging the court to dismiss Petitioner's Motion. On February 20, 2008, United States Magistrate Judge George C. Kosko entered a Report & Recommendation ("R&R") recommending to this court that Petitioner's Petition be dismissed due to a failure to respond to Defendant's Motion for Summary Judgment. Petitioner filed an Objection to the R&R on February 28, stating that he had been unable to substantively respond to the Defendant's Motion because he had never received the document. On May 2, 2008, this court ordered the Clerk of Court's office to provide Petitioner with a copy of Respondent's Motion for Summary Judgment so that he may respond. On June 9, 2008, Petitioner timely filed his Response to the Motion for Summary Judgment. Petitioner also filed a Motion to Amend his Petition on June 9, to which Defendant filed a Response in Opposition on June 30. For the following reasons, the court hereby denies Woodruff's Motion to Amend and grants Respondent's Motion for Summary Judgment.

**BACKGROUND**

Billy Woodruff ("Petitioner") is presently confined at the Perry Correctional Institution of the

South Carolina Department of Corrections (SCDC). In October 1999, Petitioner was indicted for criminal sexual conduct with a minor in the first degree. Specifically, Petitioner was accused of sexually molesting his girlfriend's daughter while his girlfriend was at work. On February 15, 2000, Petitioner received a jury trial presided over by the Honorable R. Markley Dennis, Jr.

At trial, the prosecution called as an expert witness Dr. Kim Rosboro, a psychotherapist who testified that she believed the victim's psychological symptoms were consistent with sexual assault. Dr. Rosboro based her opinion upon (1) interviews with the child during which the child explicitly stated that she had been sexually abused by Petitioner; (2) demonstrations by the child using anatomically correct dolls as to exactly how her abuse occurred; and (3) reports that the child had recently begun wetting herself, which was consistent with post-traumatic stress disorder often found in young victims of sexual abuse. The prosecution's case also included the testimony of a physician who had physically examined the victim, and found that her physical injuries were consistent with sexual abuse, as well as the courtroom testimony of the victim herself describing Petitioner's sexual abuse. At trial, Petitioner's counsel sought to introduce as evidence a guidance counselor referral form submitted by the child's teacher regarding the wetting behavior, in which the teacher informed the counselor that she believed that the wetting behavior had been occurring for several years. The prosecution objected to the introduction of this evidence as inadmissible hearsay. Petitioner's counsel argued that this fell under the business records exception to hearsay, but the judge ultimately determined that since the actual source of the relevant information was unclear, it was insufficiently reliable to admit as evidence, and sustained the prosecution's objection. Ultimately, the jury found Petitioner guilty as charged, and Judge Dennis sentenced him to 28 years imprisonment. Petitioner appealed his conviction because he argued that the trial court had erred in refusing to admit the

report. His conviction was affirmed by the South Carolina Court of Appeals on March 14, 2002.

Petitioner alleges ineffective assistance of counsel. Petitioner bases his claim upon "the fact that trial counsel failed to properly argue for the admission of a critical piece of evidence that, admittedly by counsel, may have altered the outcome of the trial in a more favorable way to his client - the Petitioner." (Pet.'s Resp. at 2.) One component of the State's case against Petitioner was testimony that the child had *recently* (as a result of the alleged sexual abuse) began to wet herself. *Id*. at 59, 78-79. The psychotherapist believed that this information was a "supporting indicator" of some kind of trauma. *Id*. at 78-79. She stated that "supporting indicators do not point directly to sexual abuse but point to the fact that a trauma of some type has occurred." *Id*. at 78. She testified that the child's *starting* to soil herself could be deemed a "symptom" of trauma and that the information she had about the case was "consistent with children who had been sexually abused." *Id*. at 78, 81. Essentially, the psychotherapist, as an expert witness testified that the child's incontinence was a symptom consistent with child sexual abuse which was one factor in her clinical diagnosis of sexual abuse in the child's case.

Had the report been admitted into evidence, Petitioner believes "it would have had the effect of rebutting the state's expert witness." (Pet.'s Resp. at 10.) Furthermore, Petitioner asserts "it would have pointed out the fallacy of the guidance counselor's assumption that the wetting problem was a new matter, and it would have served as a major attack upon the veracity of the alleged victim." *Id.* Accordingly, Petitioner argues that the "trial counsel was ineffective for not laying a factual foundation to have admitted the teacher's report." *Id*. at 7. Petitioner further argues that "trial counsel should have argued that the record was admissible to rebut the State's witness, since the State opened the door on the subject of bathroom hygiene, and as documentary basis for the counselor's

diagnosis." *Id.*

Petitioner sought post-conviction relief ("PCR") on these claims. A hearing was held on September 24, 2004 on Petitioner's PCR claims. On November 1, the PCR judge filed an Order of Dismissal, denying Petitioner's claims for relief and dismissing Petitioner's PCR application with prejudice. Petitioner appealed this adverse finding, filing a Petition for a Writ of Certiorari with the Supreme Court of South Carolina on August 29, 2005 on the question of whether his trial counsel was ineffective for not arguing that the evidence in question should have been admissible for reasons other than the business records exception to the hearsay rule. On June 28, 2007, his Petition for Certiorari was denied.

In the present habeas action, Petitioner declares that "Respondent is not entitled to Summary Judgment, and that he is entitled to have a writ of habeas corpus issued whereby the State would be required to endeavor to re-convict through a new trial, as the Petitioner was deprived a fair trial based on his attorney's deficient performance upon an issue where the determination of innocent or guilt hinged." *Id.* at 12.

## **STANDARD OF REVIEW**

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See*

*Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## ANALYSIS

### I.  Petitioner's Motion to Amend

Federal law specifically provides that habeas corpus petitions "may be amended . . . as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Accordingly, this court looks to Rule 15 in deciding whether to grant a habeas petitioner's Motion to Amend his petition, which states that leave to amend "shall be freely given when justice so requires." "[L]eave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Petitioner filed his Motion to Amend seeking to add a second ground for granting his petition for habeas relief. In addition to his ineffective assistance of counsel claims against his attorney, Petitioner also wants to add a claim for relief based upon the trial court's decision to refuse to admit the report in question, which Petitioner claims deprived him of his rights.

This court affords *pro se* litigants every opportunity to state their grounds for relief. Petitioner's proposed new habeas claim arises out of the same nucleus of operative facts as his original claim. There is no indication whatsoever that bringing this new claim at this late date is the result of any sort of bad faith on Petitioner's part, or that allowing Petitioner to assert this new ground would be unfairly prejudicial to the Defendant. However, if Petitioner's new claim, that the state court abused its discretion by sustaining the prosecution's objection to the introduction of the guidance counselor's report on the grounds that it was inadmissible hearsay evidence, is futile, leave

to amend should be denied by this court.

A court may deny a party's motion to amend if allowing the amendment would be futile. *See In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379 (4th Cir.2005) ("Leave to amend need not be given when amendment would be futile."). For a motion to amend to be denied for futility, the amendment must be "clearly insufficient or frivolous on its face." *Oroweat Foods Co.,* 785 F.2d at 510-511; *see also Rambus, Inc. v. Infineon Tech., AG,* 304 F.Supp.2d 812, 819 (E.D.Va. 2004) ("Courts generally favor the 'resolution of cases on their merits' . . . [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, *e.g.*, under motions to dismiss or for summary judgment, . . . , or for resolution at trial.") (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980))*; see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F.Supp.2d 419, 423 (D. Md. 2001).

Evidentiary decisions are fundamentally a matter of state law, and each state has the power to regulate how evidence is presented and excluded within its own courts. "[I]n considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' " *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000)). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993) (internal quotations omitted). Here, then, Petitioner would only be entitled to relief if (a) trial court's refusal to admit the evidence Petitioner sought to admit was erroneous; and (b) the erroneous ruling was so extreme that it rendered Petitioner's trial unjust to an unconstitutional degree.

At trial, Petitioner sought to introduce as evidence a document kept by the guidance counselor. The document was a referral form from the victim's teacher stating that she should see a guidance counselor because she was wetting herself. The reason Petitioner wished to have it introduced into evidence was that on the form the teacher explicitly stated that the problem had been going on for two years, which would act to rebut the claim that this behavior had recently begun. However, the trial judge ruled that the document was hearsay, and refused to allow it into evidence; Petitioner asserts this ruling was an erroneous application of the law which violated his constitutional right to present exculpatory evidence.

The statement on the form was given by the child's current teacher, who had been teaching the child for less than a year at the time the form was prepared. Therefore, the teacher would not have been teaching the child two years prior, when she asserts the wetting behavior began. The teacher gave no indication as to what formed the basis of her belief that the child's wetting behavior was a long-standing problem. Based upon the fact that there was no evidence produced as to the actual source of the information Petitioner was seeking to introduce, the trial judge exercised his discretion and determined that the information was not sufficiently reliable to be admitted under an exception to the hearsay rule, and accordingly, refused to allow Petitioner to introduce the report. The South Carolina Court of Appeals upheld the trial court's ruling as being within his discretion.

South Carolina evidence law does provide that records kept in the ordinary course of business can be admitted at trial as an exception to ordinary hearsay rules, but the Supreme Court of South Carolina has explicitly held that:

> Not everything contained in a "business record" is automatically admissible under § 19-5-10. This section makes it a requirement for admission that "in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." This gives some control to the trial judge to exclude or

> require additional proof, if the authority or veracity of the record were a genuine issue.

*Kershaw County Dep't of Soc. Servs. v. McCaskill*, 276 S.C. 360, 362, 394 S.E.2d 771, 773 (1981). After reviewing the record, the court is satisfied that the trial court was within its lawful discretion to reject the proposed evidence because there were legitimate questions about its veracity, given that there was no indication as to the actual source of the information that the child had been wetting herself for two years. Because Petitioner could produce no additional evidence as to this source, the trial court was well within its discretion to refuse to admit the evidence as an exception to hearsay.

Furthermore, the court notes that even if the trial court had been erroneous in this ruling, it is not at all clear that this ruling was so extreme and prejudicial as to render the trial unconstitutional. The fact is that the evidence regarding the child's wetting problem was only a relatively minor piece of evidence in the state's case. The bulk of the prosecution's case rested upon explicit claims and descriptions by the child of her sexual abuse by Petitioner. So while the court fully acknowledges that, had the report been admitted into evidence, it may have cast some small degree of doubt upon one piece of circumstantial evidence that supported of the prosecution's sexual abuse allegations, it would hardly have had the talismanic exonerating effect that Petitioner claims.

Accordingly, Petitioner's proposed new claim that the trial judge abused his discretion in refusing to admit the guidance counselor's report is clearly devoid of legal merit, and allowing him leave to amend his § 2254 petition to add such a claim would be futile. Therefore, Petitioner's Motion to Amend is denied.

## II.     Petitioner's Motion for Relief under § 2254 for Ineffective Assistance of Counsel

Under § 2254, a federal court may only grant a writ of habeas corpus on a matter which was adjudicated on its merits in state court where the outcome "resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the outcome "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08.

"The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal habeas court may not issue the writ under the "unreasonable application" clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

9

Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

Petitioner asserts that he is entitled to a Writ of Habeas Corpus because his "trial counsel was ineffective for not properly arguing for the admission of a critical piece of evidence that refuted the testimony of the state's expert witness." (Pet.'s Resp. at 3.)

In addressing issues concerning the ineffectiveness of counsel, the Supreme Court of the United States has set forth a two-pronged test which was announced in *Strickland v. Washington*, 466 U.S. 668, 687-98 (1984). The first prong of the *Strickland* test, the performance prong, relates to professional competence. In order to satisfy this prong, the petitioner must show that his attorney's representation was deficient and that it fell below "an objective standard of reasonableness." *Id.* at 687-91. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort must be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The Supreme Court and the Fourth Circuit have emphasized that in making this determination, there is a presumption that trial counsel's conduct was within the wide range of reasonable professional assistance credited to attorneys representing criminal defendants. *Id.* at 689; *see Fields v. Attorney General of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985).

In order to show that the second prong, the prejudice prong, of the *Strickland* test has been violated, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If the petitioner does not meet his burden of proving prejudice, then "a reviewing court need not consider the performance prong." *Id*.

> Petitioner argues that he has satisfied both prongs of the *Strickland* test:
>
> When trial counsel admits to deficient performance on a specific instance of critical nature - such admittance satisfies the first prong of *Strickland* . . . and it's prodigies [sic]. And, when trial counsel admits the common sense facet of consequence that, had he done differently, (been better prepared) the outcome of the trial would have likely been more favorable for his client, then the second prong of *Strickland*, *supra* is met. And so, respondent cannot be entitled to Summary Judgment after such admissions have been entered into the Record as exist with the case at bar.

(Resp. at 4.)

Petitioner bears the weighty burden of showing by "clear and convincing" evidence that his counsel's performance was objectively deficient, and that but for that deficient performance, the outcome of the trial would have been different. After reviewing the entirety of the record, the court finds that Petitioner has failed to carry this burden.

As an initial matter, the court notes that Petitioner has failed to show by clear and convincing evidence that trial counsel's performance was so ineffective as to fall below "an objective standard of reasonableness." While a single severe error can support a claim of ineffective assistance of counsel, any error should be evaluated in light of all circumstances in the case, and the focus of a court's inquiry into counsel's performance should be into whether his or her overall representation of a defendant comported with the profession's minimum standards of competency, not merely whether counsel made a mistake. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). In order to meet the constitutional standard for effectiveness, representation by counsel "must only be objectively reasonable, not flawless or to the highest degree of skill." *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000). Inherent in this standard is the acknowledgment that even the most skillful defense attorneys are bound to make mistakes, sometimes very important mistakes, in their representation of criminal defendant. If the legal system were to afford prisoners a cause of action merely for demonstrating that,

in hindsight, their trial counsel could have done something better, the court system would be choked with habeas petitions and trials on those petitions.

Here, even with Petitioner's counsel's acknowledgment at the PCR hearing that he wishes he would have been able to get the counselor's report introduced,[1] and that he believes that the introduction of the report would have substantially undermined the veracity of the expert testimony regarding the wetting coinciding with the alleged sexual abuse, Petitioner's claim falls far short of showing counsel's assistance to be ineffective by clear and convincing evidence. While counsel was ultimately unsuccessful in having the report admitted under the business records exception, he could have possibly been successful in having the report admitted as evidence under the theories that (a) the state had opened up that avenue of cross-examination, and (b) the report was a document that the counselor could have relied upon in drawing an expert conclusion. (App. at 253). First and foremost, the court notes that, as explained in the previous section, the trial judge had legitimate concerns about the basis for the information in the report, and it is not at all clear to this court that the trial court would have admitted the report even had trial counsel made one of the aforementioned legal arguments. However, even assuming it would have been admitted under either argument, this was simply an error in arguing evidentiary procedure, and an error of a type that is not at all uncommon

---

[1] At the PCR hearing, Petitioner's trial counsel stated:

> I absolutely tried to get it in, I mean, that was the way I thought to try and get it in. I wanted it in and at that time I was trying to think of any way I could. Apparently there are some other ways I could have tried. Knowing that now, and I may have learned that after I tried this case, but I certainly would have tried to do that because I felt that was going to be a major attack on the child's credibility and, as you say and I think the Court of Appeals said, I could have tried that and I certainly would do it if I had it to do over, because I really wanted that in there.

(App. at 251.)

in all trials, civil and criminal. While it certainly would have been better for Petitioner had counsel also argued other reasons for the report's admission, the court cannot say that the failure to do is "clear and convincing" evidence that counsel's overall representation of Petitioner at trial fell below "an objective standard of reasonableness." On the contrary, the record shows that trial counsel engaged in a thoughtful, diligent defense of Petitioner, investigating Petitioner's claim of innocence, presenting Petitioner's case to the jury, and vigorously cross-examining all witnesses called by the prosecution.

However, even if trial counsel's performance was objectively deficient, Petitioner has failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As detailed in the previous section, while the admission of the report may have undermined the prosecution's expert's opinion that the child's wetting behavior had begun because of the sexual abuse, this was only one of many pieces of evidence the prosecution put before the jury in support of its case. The wetting behavior was only one factor in the prosecution's expert's testimony that she believed the child's behavior was consistent with sexual abuse, as the psychotherapist also conducted extensive interviews with the child, during which the child explicitly stated that she had been sexually abused, and demonstrated what had occurred with the use of anatomically correct dolls. (App. at 252-60). Furthermore, the expert's testimony was only part of the prosecution's case, which also included direct testimony by the child detailing Petitioner's acts of sexual abuse, and expert testimony by a physician indicating that the child had suffered physical harm consistent with sexual abuse. The admissibility of the report, therefore, may only have had a relatively minor impact on the case, and in light of the overwhelming direct evidence of Petitioner's crime presented by the prosecution, this court cannot say that "there is a reasonable probability that," had trial counsel managed to convince the trial judge to admit the

13

report into evidence, Petitioner would not still have been convicted of his crime.

Accordingly, Petitioner has failed to bear his legal burden of demonstrating that his trial counsel provided ineffective assistance to such a degree as to violate his constitutional rights, and Respondent's Motion for Summary Judgment is granted.

## **CONCLUSION**

It is therefore **ORDERED**, for the foregoing reasons, that Respondent's Motion for Summary Judgment is **GRANTED.** It is further **ORDERED** that Woodruff's Motion to Amend his Petition is **DENIED**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 8, 2008**